# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELI LILLY AND COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOHN DEREK GITMED, et al.,<br><br>　　　　Defendants. | Case No. 1:16-cv-00178-DAD-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT ANTHONY POLLINO, JR.<br><br>(ECF Nos. 43, 44, 46, 48)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Currently pending before the Court is Plaintiff Eli Lilly and Company's ("Plaintiff") application for entry of default judgment against Defendant Anthony Pollino, Jr. which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I.**

**BACKGROUND**

Plaintiff "is a worldwide innovator, manufacturer, distributor and marketer of pharmaceutical products, and is a leader in the industry." (Compl. ¶ 13.) Plaintiff has the exclusive right to manufacture for distribution the drug Cialis which has been approved for the treatment of erectile-dysfunction ("ED"), the signs and symptoms of benign prostatic hyperplasia, or enlarged prostate ("BPH"), and both ED and the signs and symptoms of BPH.

(Compl. at ¶ 15.) Plaintiff has the exclusive right to manufacture Cialis and it is only available by prescription. (Compl. at ¶ 15.) Plaintiff owns several trademarks that are registered with the United States Patent and Trademark Office that are used in interstate commerce in connection with the sale and promotion of Cialis. (Compl. at ¶ 16.)

Despite protections taken by Plaintiff to protect its intellectual property rights, foreign and domestic parties have imported and sold counterfeit products that violate those rights. (Compl. at ¶ 19.) These counterfeit products cause irreparable damage to Plaintiff's image and the brand names of its pharmaceutical products. (Compl. at ¶ 25.)

Defendants John Gitmed, Holly Gitmed, Felicia Gitmed, and Anthony Pollino, Jr. sold counterfeit versions of the drug Cialis in person or by mail in Modesto and Los Angeles, California, and Las Vegas, Nevada. (Compl. at ¶ 28.) The counterfeit version of Cialis were shipped by mail and private and commercial carriers to customers in California and other states. (Compl. at ¶ 28.)

Defendant John Gitmed provided suppliers with pictures of tablets and packaging and negotiated with suppliers to produce imitations of Cialis. (Compl. at ¶ 31.) Once the negotiations were complete, the defendants directed the suppliers to ship the counterfeit goods to various addresses within the United States, including to the "California Confidence Company." (Compl. at ¶ 32.) Some of the shipments to the California Confidence Company were intercepted by the United States Customs and Border Patrol ("CBP") in the Los Angeles area. (Compl. at ¶ 33.) Specifically on September 5, 2013, CBP personnel in Los Angeles seized a package from a Chinese supplier that was addressed to California Confidence Company in Florida which contained over 2,000 counterfeit Cialis tablets. (Compl. at ¶ 33.)

The defendants posted online advertisements offering genuine Lilly Cialis or stating that their products were genuine. (Compl. at ¶ 34.) The defendants did not sell the products through pharmacies or other authorized outlets. (Compl. at ¶ 35.)

About August 28, 2014, a grand jury in the Eastern District of California returned an indictment against Defendants John Gitmed, Holly Gitmed, Felicia Gitmed, and Anthony Pollino, Jr. for conspiracy to traffic in counterfeit goods and commit mail fraud under 18 U.S.C.

§ 371 (one count) and trafficking in counterfeit goods under 18 U.S.C.§ 2320(a)(l) (one count), and initiated a criminal proceeding in the Eastern District, Case No. 1:14-cr-00189-AWI-BAM. (Compl. at ¶ 37.) Defendants John Gitmed, Holly Gitmed, Felicia Gitmed, and Anthony Pollino, Jr. pled guilty to trafficking in counterfeit Cialis in violation of 18 U.S.C. § 2320(a). (Compl. at ¶ 38.)

In entering his guilty plea, Defendant John Gitmed admitted that he, together with the co-defendants, counterfeited erectile dysfunction drugs and associated packaging, including Cialis. (Compl. at ¶ 29.) Defendants Holly Gitmed and Anthony Pollino, Jr. made substantially similar admissions as part of their plea agreements admitting to counterfeiting Cialis. (Compl. at ¶ 40.)

On February 8, 2016, Plaintiff filed this action against Defendants John Gitmed, Holly Gitmed, Felicia Gitmed, and Anthony Pollino, Jr. alleging trademark counterfeiting, trademark infringement, false designation of origin, and federal unfair competition in violation of the Lanham Act; common law passing off and unfair competition; and violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 et seq. (ECF No. 1.)

Felicia Gitmed and Holly Gitmed filed answers on March 3, 2016, and March 9, 2016 respectively. (ECF Nos. 7, 8.) On May 11, 2016, Plaintiff filed a stipulation to dismiss Defendant Holly Gitmed from the action. (ECF No. 20.) On August 9, 2016, default was entered against Defendant Anthony Pollino, Jr. (ECF No. 30.) On September 7, 2016, Plaintiff filed a stipulation to dismiss Defendant Felicia Gitmed. (ECF No. 33.) On September 26, 2016, Defendant John Gitmed filed a motion to dismiss. (ECF No. 35.) Plaintiff filed an opposition to the motion to dismiss on October 28, 2016.[1] (ECF No. 37.)

On February 8, 2017, Plaintiff filed the instant application for default judgment as to Defendant Anthony Pollino, Jr. (ECF No. 43.) On February 9, 2017, Plaintiff filed an amended notice of the application for default judgment as to Defendant Pollino. (ECF No. 44.) On February 10, 2017, Plaintiff filed a second amended notice of the application for default judgment. (ECF No. 46.) At the request of the Court, Plaintiff filed supplemental briefing on

---

[1] The motion to dismiss is currently pending before District Judge Dale A. Drozd.

3

March 13, 2017.  (ECF No. 48.)

**II.**

**LEGAL STANDARD**

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, unless a claim is for a sum certain or a sum that can be made certain by computation, a party must apply to the court for a default judgment.  Fed. R. Civ. P. 55(b).  Upon entry of default, the complaint's factual allegations regarding liability are taken as true.  Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977); Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012).  However, the complaint's factual allegations relating to the amount of damages are not taken as true. Geddes, 559 F.2d at 560.  Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means.  Microsoft Corp. v. Nop, 549 F.Supp.2d 1233, 1236 (E.D. Cal. 2008).  "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992).  Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

Entry of default judgment is not a matter of right and it is within the discretion of the court whether default judgment should be entered.  Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001); Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986).  The Ninth Circuit has set forth the following factors for the court to consider in exercising its discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.

**III.**

**DISCUSSION**

In the current application, Plaintiff seeks default judgment and requests monetary damages and a permanent injunction.

4

**A.    Jurisdiction**

1.    Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress. U.S v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000). Pursuant to 28 U.S. C. § 1331, federal courts have original over "all civil actions arising under the Constitution, laws, or treaties of the United States. "A case 'arises under' federal law either where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law." Republican Party of Guam v. Gutierrez, 277 F.3d 1086, 1088 (9th Cir. 2002) (internal punctuation omitted) (quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 8–9 (1983) (citations omitted)). "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Republican Party of Guam, 277 F.3d at 1089 (citations omitted).

Plaintiff brings this action alleging violations of 15 U.S.C. Section 1121 (actions arising under the Lanham Act); and 28 U.S.C. Section 1338(a) (any act of Congress relating to patents, copyrights and trademarks). As the claims in this action arise under federal law, federal question jurisdiction exists.

2.    Service of Process

Rule 4 of the Federal Rules of Civil Procedure sets forth the requirements for the manner of service on an individual. Rule 4(e) states that an individual may be served by following state law for service of the summons in the state where the court is located or by personally delivering a copy of the summons and a complaint, leaving a copy of each at the individual's usual place of abode, or delivering a copy of each to an agent authorized to receive service. Fed. R. Civ. P. 4(e)(2).

Under California law, an individual may be served by delivering a copy of the summons and of the complaint to such person or to a person authorized by him to receive service of process. Cal. Civ. Proc. Code. § 416.90. Under California law, "[s]ervice may be effectuated on

a prisoner by serving process on the sheriff or jailer who has custody of the prisoner." <u>Sakaguchi v. Sakaguchi</u>, 173 Cal.App.4th 852, 858 (2009). Pursuant to the California Penal Code, a sheriff or jailer who is served with a paper in a judicial proceeding is required to deliver it to the prisoner forthwith. Cal. Pen. Code §4013(a). Therefore, "a sheriff or jailer is authorized by law to receive service of process on behalf of a prisoner in his or her custody." <u>Sakaguchi</u>, 173 Cal.App.4th at 858.

Plaintiff submits a certificate of service showing that Defendant Anthony Pollino, Jr. was served by the Sheriff's Department Civil Bureau at the United States Penitentiary, 3901 Klein Blvd., Lompoc, California 93436, by leaving the documents with the party or person authorized to receive service of process for the party on March 24, 2016, at 10:00 a.m. (ECF No. 12.) The Court finds that service of process on Defendant Pollino was proper under California law.

**B.     The <u>Eitel</u> Factors Weigh in Favor of Default Judgment**

As discussed below, consideration of the <u>Eitel</u> factors weigh in favor of granting default judgment in this instance against Defendant Pollino.

1.     <u>Possibility of Prejudice to Plaintiff</u>

The first factor weighs in favor of entry of default judgment. If default judgment is not entered, Plaintiff is effectively denied a remedy for the violations alleged in this action unless Defendant Pollino appears. Defendant Pollino may never appear in the action. Therefore, this factor weighs in favor of granting default judgment.

2.     <u>The Merits of Plaintiff's Substantive Claims and Sufficiency of Complaint</u>

The court is to evaluate the merits of the substantive claims alleged in the complaint as well as the sufficiency of the complaint itself. In doing so, the court looks to the complaint to determine if the allegations contained within are sufficient to state a claim for the relief sought. <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978).

**a.     Law to Apply to Plaintiff's Claims**

Plaintiff brings claims of trademark counterfeiting, trademark infringement, false designation of origin, and federal unfair competition under the Lanham Act; common law passing and unfair competition; and unfair competition under California's Unfair Competition

Law.

   i.   Trademark Infringement, False Designation of Origin, and Unfair Competition

"The tests for infringement of a federally registered mark under § 32(1), 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same." Spy Optic, Inc. v. Alibaba.Com, Inc., 163 F. Supp. 3d 755, 764 (C.D. Cal. 2015) (quoting Grey v. Campbell Soup Co., 650 F.Supp. 1166, 1173 (C.D.Cal.1986)); see also Wecosign, Inc. v. IFG Holdings, Inc., 845 F.Supp.2d 1072, 1079 (C.D. Cal. 2012) (while there are some differences between a claim for trademark infringement under section 1114(a) and a claim for false designation of origin under section 1125(a), "the analysis under the two provisions is oftentimes identical."). "[T]he courts have uniformly held that common law and statutory trademark infringement are merely specific aspects of unfair competition." Spy Optic, Inc., 163 F.Supp.3d at 768. Further, "[t]he tests for infringement of a federally registered mark under § 32(1), 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same." Id. The Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims under the Lanham Act.' " Wecosign, Inc., 845 F.Supp.2d at 1079 (quoting Cleary v. News Corp., 30 F.3d 1255, 1262–63 (9th Cir.1994)). Therefore, the Court will jointly analyze Plaintiff's trademark infringement, unfair competition, false designation of origin, state statutory unfair competition, and state common law unfair competition claims.

Plaintiff alleges violations of section 32(l) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(l) and 1125(a). "The Lanham Act created a federal protection against two types of unfair competition, infringement of registered trademarks, 15 U.S.C. s 1114, and the related tort of false designation of the origin of goods, 15 U.S.C. s 1125(a)." Int'l Order of Job's Daughters v. Lindeburg & Co., 633 F.2d 912, 915 (9th Cir. 1980).

"To prevail on a claim of trademark infringement, the plaintiff "must demonstrate that it owns a valid mark, and thus a protectable interest," and that the defendant's "use of the mark 'is

7

likely to cause confusion, or to cause mistake, or to deceive.' " Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1196 (9th Cir. 2009) (quoting KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 602 (9th Cir.2005)). The critical inquiry under a trademark infringement claim is "whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 632 (9th Cir.2008).

The test for false designation of origin is similar to the test for infringement of a registered trademark under 15 U.S.C. § 1114. Int'l Order of Job's, 633 F.2d at 917. "Essentially, a false designation claim requires a showing that the defendant falsely represented that it was the 'source' of the goods when it was not, thereby suggesting that the defendant was 'the producer of the tangible product sold in the marketplace.' " Jurin v. Google Inc., 695 F.Supp.2d 1117, 1121 (E.D. Cal. 2010) (quoting Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 n. 1 (2003)).

Plaintiff owns several federal trademarks that are registered with the United States Patent and Trademark Office that are used in the sale and promotion of Cialis: a) Reg. No. 2,724,589 for the word mark CIALIS; b) Reg. No. 2,833,222 for the Cialis® tablet appearance (gold teardrop shape with a "C" design); c) Reg. No. 2,833,221 for the Cialis "swirl" design mark; d) Reg. No. 1,318,867 for the "Lilly" word in stylized letters mark; and e) Reg. No. 1,226,434 for the word mark LILLY. (Compl. at ¶ 16.) Federal registration of a trademark is prima facie evidence of the ownership of the mark. Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006).

Plaintiff alleges that Defendants sold counterfeit versions of Cialis in person or by mail to customers who responded to their advertisements. (Compl. at ¶¶ 27, 29.) These tablets were not obtained from Plaintiff, but were obtained from foreign or domestic counterfeit suppliers and middlemen. (Compl. at ¶ 29.) The product offered and supplied by Defendants was not genuine Cialis and the packaging was not genuine. (Compl. at ¶ 30.) On September 5, 2013, CBP confiscated over 2,000 counterfeit Cialis tablets that were shipped by a Chinese supplier to the "California Confidence Company" which is an address controlled by Defendants. (Compl. at ¶¶

32, 33.) Defendants knew the products were counterfeit. (Compl. at ¶ 35.) Plaintiff has alleged that Defendants conspired to obtain counterfeit merchandise, and offered it for sale as Cialis.

Around August 28, 2014, a grand jury indicted Defendant Pollino for conspiracy to traffic in counterfeit goods and commit mail fraud and trafficking in counterfeit goods. (Compl. at ¶ 37.) Pursuant to a plea agreement, Defendant Pollino pled guilty to trafficking in counterfeit Cialis. (Compl. at ¶ 38.) Plaintiff has suffered substantial injury, including loss of customers, dilution of its goodwill, confusion of potential customers, injury to Defendant's reputation, and diminution in value of its intellectual property. (Compl. at ¶ 50.)

Defendants use of the markings and packing of Cialis on the product they were distributing, without the permission of the trademark owner, is likely to cause confusion, and was intended to deceive consumers into thinking they were purchasing genuine Cialis. Plaintiff has sufficiently alleged facts that Defendant Pollino's "use of the mark 'is likely to cause confusion, or to cause mistake, or to deceive.' " Lahoti, 586 F.3d at 1196. Plaintiff has stated a claim for trademark infringement. Plaintiff is therefore entitled to summary judgement on its trademark infringement, unfair competition, false designation of origin, and state statutory and common law unfair competition claims.

ii.   Trademark Counterfeiting

To prove a claim for trademark counterfeiting, the plaintiff must demonstrate that the defendant "intentionally used a counterfeit mark in commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) its use was likely to confuse or deceive." State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d 708, 721 (9th Cir. 2005). The use of the Cialis markings on the medication and packaging material and advertising the product as genuine Cialis along with the guilty plea of Defendant Pollino is sufficient to state a claim of trademark counterfeiting.

3.   The Sum of Money at Stake in the Action

The sum of money at stake in this action also weighs in favor of default judgment. Default judgment is disfavored where large amounts of money are involved or the award would be unreasonable in light of the defendant's actions. G & G Closed Circuit Events, LLC v.

9

Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012). In this action, Plaintiff is seeking statutory damages of $25,000 for each of the 5 marks, for a total of $125,000. The Court finds that while the amount of money at stake in the action is significant, it is reasonably proportionate to the harm caused by Defendant's conduct in trafficking of counterfeit Cialis. Therefore, this factor weighs in favor of granting default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

In this action, Plaintiff has filed a well-pleaded complaint including the elements necessary to prevail on the claims raised in this action. The Clerk of the Court has entered default and therefore, the factual allegations in the complaint are taken as true. There is nothing to suggest that there are genuine of issues of material fact in dispute in this action. Accordingly, this factor weighs in favor of granting default judgment.

### 5. Whether the Default Was Due to Excusable Neglect

Defendant has failed to file a responsive pleading, or oppose the application for default judgment. Approximately one year has passed since Defendant Pollino was served the complaint in this action. Additionally, it has been over seven months since the Clerk entered default against Defendant Pollino. Defendant Pollino has been provided with two notices regarding this action and, given the amount of time that has passed without Defendant Pollino responding the Court concludes that the failure to respond was due to the affirmative decision not to oppose this action rather than excusable neglect. This factor weighs in favor of granting default judgment.

### 6. The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

Whenever possible cases should be decided on the merits, however, a defendant's failure to answer the complaint "makes a decision on the merits impractical if not impossible." PepsiCo, Inc. v. California Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. Dec. 27, 2002). In this instance, the other factors in favor of default judgment outweigh the policy favoring a decision on the merits.

### 7. The Eitel Factors Weigh in Favor of Entry of Default Judgment

After analyzing the Eitel factors, the Court finds that on balance the factors weigh in

favor of granting Plaintiff's application for entry of default judgment.

### C. Just Reason for Delay in Entry of Default Judgment

While arguing for entry of default, Plaintiff did not address the fact that this action continues to proceed against Defendant John Gitmed. Therefore, the Court ordered Plaintiff to file a supplemental brief addressing whether there was any just reason for delay. Plaintiff filed the supplemental brief arguing that there is no just reason for delay in entering default judgment against Defendant Pollino because doing so would not create a risk of inconsistent judgments with respect to the remaining defendant.

Rule 54 of the Federal Rules of Civil Procedure provides that where an action is brought alleging more than one claim or is against more than one party, the Court may direct entry of final judgment against fewer than all claims or parties only if the Court expressly determines that there is no just reason for delay. Fed. R. Civ. P. 54(b). However, "when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted." Shanghai Automation Instruments Co., Ltd., 194 F.Supp.2d at 1006 (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3D § 2690 (2001)).

The leading case on the issue of default judgment in actions involving multiple defendants is Frow v. De La Vega, 15 Wall. 552, 82 U.S. 552 (1872). In re First T.D. & Inv., Inc., 253 F.3d 520, 532 (9th Cir. 2001). In Frow, the Supreme Court held that "where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." In re First T.D., 253 F.3d at 532. The possibility of inconsistent judgments must be avoided. Id. The Ninth Circuit held that where the actions by the defendants and the central issue are the same, the Court abuses its discretion by entering default judgment against the defaulting defendant that creates inconsistent judgments against multiple defendants. Id. at 532-533.

In this action, Plaintiff has alleged that all the defendants were liable for the same

conduct, basically distributing counterfeit pharmaceuticals. Since all defendants in this action have pled guilty to charges of trafficking in counterfeit Cialis, (Compl. at ¶ 38), there is no possibility that entry of default judgment would result in inconsistent judgments on the issue of liability. Therefore, the Court finds no just reason to delay entry of default judgment as to liability against Defendant Pollino.

Plaintiff also argues that judgment as to the damages should be entered since it is seeking statutory damages at the low end of the statutory limits and damages against Defendant Pollino do not depend on the damages award against Defendant John Gitmed, the only defendant remaining in this action. While Plaintiff cites to cases and argues that greater statutory damages can be imposed upon certain defendants who were more involved in the counterfeiting and infringement than other defendants, Plaintiff does not cite to any case in which a court awarded statutory damages against a defaulting defendant when there are defendants who have not defaulted in the action. See Johnson & Johnson v. Azam Int'l Trading, No. 07 -CV-4302 SLT SMG, 2013 WL 4048295, at *1 (E.D.N.Y. Aug. 9, 2013) (entry of default judgment where the plaintiff was not pursing claims against the remaining unserved defendants); Coach, Inc. v. Cellular Planet, No. 2:09-CV-00241, 2010 WL 2572113, at *2 (S.D. Ohio June 22, 2010) (entry of default against all defendants in the action).

Plaintiff cites Krevat v. Burgers to Go., Inc., No. 13-cv-6258(JS)(AKT), 2014 WL 4638844 (E.D. N.Y. Sept. 16, 2014), in which the court addressed authority holding that "[w]here there are multiple defendants who may be held jointly and severally liable and 'some but not all defendants have defaulted, 'the courts have consistently held that it is appropriate to enter judgment solely as to liability and not as to the amount of damages to be assessed against the defaulting party. . . ." 2014 WL 4638844, at *15. This avoids the issue of dealing with inconsistent damage inquests. Id. Since the complaint in the action alleged that the defendants acted in concert or participation, the court held it would be prudent to defer ruling on damages until the claims against the remaining defendant had been adjudicated. Id.

In Shanghai Automation Instrument Co., the plaintiff brought claims based on a contract and sought default judgment against a defaulting defendant where a non-defaulting defendant

remained in the action. The Court found that entry of default judgment would not result in inconsistent judgments and considered whether there was no just reason for delay in respect to damages. 194 F.Supp.2d at 1010. The court found that since the plaintiff was not seeking a single damage award against all defendants a full damages award against the defaulting defendant would not necessarily be inconsistent with a lesser award against the remaining defendant. Id. The non-defaulting defendant could be held liable on less than all the plaintiff's claims and there was no just reason for delay. Id.

However, in this instance, the complaint only alleges specific acts by Defendant John Gitmed which resulted in the counterfeiting of Cialis. Plaintiff alleges that Defendant John Gitmed provided suppliers with pictures of tablets and packaging and negotiated when suppliers produced poor imitations of the products. While the complaint alleges that Defendant Pollino made substantially similar admissions of intentionally trafficking in counterfeit marks in connection with the goods as part of his plea agreement, there are no specific allegations regarding the conduct of Defendant Pollino. Since the conduct of Defendant Pollino is alleged as a conspiracy to sell counterfeit Cialis, which is based upon the acts of Defendant Gitmed, a lesser damage award against Defendant Gitmed could be inconsistent with an award entered at this time against Defendant Pollino.

In this instance, the defendants are joint tortfeasors and Plaintiff is entitled to a single award of statutory damages under section 1117(c). See Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc., 658 F.3d 936, 947 (9th Cir. 2011). For these reasons, the Court finds it is prudent to defer ruling on a damages award against Defendant Pollino until this action is resolved against Defendant Gitmed. Krevat, 2014 WL 4638844, at *15. Therefore, the Court finds there is just reason for delay and recommends that Plaintiff's request for entry of a damage award against Defendant Pollino be denied until this action is resolved against Defendant Gitmed.

### D. Injunctive Relief

Plaintiff also seeks a permanent injunction against Defendant Pollino. Section 1116 provides the Court with the power to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent future trademark

infringement. 15 U.S.C. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988). "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

Here, based upon Defendant Pollino's default, Plaintiff has demonstrated actual success on the merits of the claims raised in the complaint as discussed above. However, while Plaintiff's complaint alleges the likelihood of harm, this is insufficient for the issuance of a permanent injunction. The moving party must establish not only actual success on the merits, Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 996 (9th Cir. 2011), but "actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc., 736 F.3d 1239, 1249 (9th Cir. 2013). Other than conclusory statements that it will suffer irreparable harm, Plaintiff does not address the four factors to be considered in granting a permanent injunction.

Further, since Defendant Pollino and his co-defendants have pled guilty to criminal charges of trademark infringement and Defendants Pollino and Gitmed are incarcerated, there is no evidence that there is continuing trademark infringement. The Court finds that Plaintiff has not shown actual irreparable harm, nor addressed the additional factors to be considered to obtain a permanent injunction in this action. Accordingly, the Court recommends that Plaintiff's request for permanent injunctive relief be denied.

///

///

///

## IV.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's application for entry of default judgment against Defendant Anthony Pollino, Jr. be granted as to liability and denied as to damages and injunctive relief.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 23, 2017**

UNITED STATES MAGISTRATE JUDGE